IN THE SUPREME COURT OF NORTH CAROLINA

No. 130PA24

Filed 14 August 2026

JASON M. SNEED

v.

CHARITY A. JOHNSTON (SNEED)

On discretionary review pursuant to N.C.G.S. § 7A-31(c) (2023) of a unanimous decision of the Court of Appeals, 293 N.C. App. 650 (2024), affirming an order and judgment entered on 30 September 2022 by Judge Gary L. Henderson in District Court, Mecklenburg County. Heard in the Supreme Court on 11 September 2025.

*Dowling PLLC, by Troy D. Shelton, and Miller Bowles Cushing, PLLC, by Nicholas L. Cushing, for plaintiff-appellant.*

*Connell & Gelb PLLC, by Michelle D. Connell, for defendant-appellee.*

ALLEN, Justice.

When married couples divorce, the property at issue sometimes includes professional entities such as law firms. In many instances, a professional practice's most valuable asset is something called "goodwill," which has been defined as "the expectation of continued public patronage." *Poore v. Poore*, 75 N.C. App. 414, 420 (1985). Courts in other states have recognized that a professional practice's goodwill can consist of both enterprise goodwill and personal goodwill. Enterprise goodwill is marketable and stays with the practice. Personal goodwill is tied to—and thus goes with—the practitioner. Most courts that have distinguished between the enterprise

and personal goodwill of professional practices have concluded that of the two, only enterprise goodwill can qualify as marital property. Consequently, they have held that personal goodwill cannot be distributed between the parties to marital dissolution proceedings.

In this divorce case, the trial court had to classify the goodwill of the law firm started by plaintiff Jason M. Sneed during his marriage to defendant Charity A. Johnston. Although the trial court distinguished between the law firm's enterprise goodwill and personal goodwill, it classified both forms of goodwill as marital property and awarded defendant half the total value thereof. The Court of Appeals affirmed the trial court's order, while also asserting that "our courts have consistently declined" to divide goodwill into categories. *Sneed v. Johnston*, 293 N.C. App. 650, 659 (2024).

For the reasons explained below, today we join the ranks of those state appellate courts which have distinguished enterprise goodwill from personal goodwill and have held that the personal goodwill of a professional practice cannot be treated as marital property. Accordingly, we reverse the decision of the Court of Appeals to the extent that it holds otherwise and remand this case for entry of an equitable distribution order consistent with our decision.

I.

Plaintiff and defendant wed on 17 August 1996 and legally separated on 5 January 2015. They divorced on 8 March 2016.

The parties agreed on the division of all assets except Sneed, PLLC, the law firm started by plaintiff after the parties wed but before they separated. Plaintiff was the law firm's sole practitioner.

With the consent of the parties, the trial court appointed appraiser Greg Reagan to assess the law firm's value as of the date of the parties' separation. Although plaintiff initially supplied Reagan with requested financial records, he began ignoring Reagan's communications and did not pay his portion of Reagan's fee, which defendant then paid. Defendant eventually hired Reagan to perform a valuation of the law firm.

At trial, plaintiff testified that the value of Sneed, PLLC was either negative or nonexistent due to an outstanding line of credit. Reagan valued the law firm at $3,100,000 as of the date of separation. According to Reagan, ten percent of the law firm's goodwill value consisted of enterprise goodwill, while the remaining ninety percent consisted of personal goodwill tied to plaintiff.

The trial court adopted Reagan's valuation of the firm. It divided the goodwill value into $302,436 enterprise goodwill and $2,688,321 personal goodwill. The court ordered plaintiff to pay a distributive award to defendant of $1,550,000, half the firm's total purported value as of the date of separation. Plaintiff was to pay this amount in monthly installments of $8,611.11 over fifteen years.

On appeal, plaintiff challenged the trial court's equitable distribution order on multiple grounds. Most relevant for purposes of our decision, he argued that the trial

court erred by classifying Sneed, PLLC as entirely marital property. According to plaintiff, the trial court should have classified the firm's personal goodwill as plaintiff's own separate property and excluded it from equitable distribution. *See generally* N.C.G.S. § 50-20(b)(2) (2025) (defining "separate property" in the equitable distribution context).

The Court of Appeals affirmed the trial court's order, including its treatment of the law firm's goodwill. The appellate court noted the statutory presumption "that all property acquired after the date of marriage and before the date of separation is marital property[.]" *Sneed,* 293 N.C. App. at 659 (2024) (quoting N.C.G.S. § 50-20(b)(1) (2021)). Quoting *Poore v. Poore,* the Court of Appeals explained that "goodwill is an asset that must be valued and considered in determining the value of a professional practice for purposes of equitable distribution." *Id.* (quoting *Poore,* 75 N.C. App. at 420–21). The court further stated that "our courts have consistently declined to draw a distinction between personal and enterprise goodwill." *Id.*

Turning to the trial court's findings of fact regarding the law firm's value, the Court of Appeals concluded that the findings were "supported by competent evidence, including Reagan's report." *Id.* at 660. The Court of Appeals determined that "these [f]indings support the trial court's [c]onclusion that [d]efendant was entitled to a distributive award of $1,550,000 representing her share of Sneed, PLLC." *Id.* The Court of Appeals therefore affirmed the trial court's order and judgment. *Id.*

Pursuant to N.C.G.S. § 7A-31(c), plaintiff petitioned this Court to review the following issue: "In an equitable distribution proceeding, how should a court classify personal and enterprise goodwill in a business owned by a spouse?" We allowed plaintiff's petition.

## II.

Equitable distribution is governed by N.C.G.S. § 50-20. The equitable distribution statute "requires the trial court to conduct a three-step process: (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the marital and divisible property." *Smith v. Smith*, 387 N.C. 255, 258 (2025) (quoting *Brackney v. Brackney*, 199 N.C. App. 375, 381 (2009)). "A trial court's determination that specific property is to be characterized as marital, divisible, or separate property will not be disturbed on appeal if there is competent evidence to support the determination. Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *Id.* (cleaned up).

In contrast, a trial court's interpretation of N.C.G.S. § 50-20 is reviewed de novo. *See, e.g.*, *Miller v. Carolina Coast Emergency Physicians, LLC*, 382 N.C. 91, 104 (2022) (cleaned up) ("[W]hen the pertinent inquiry on appeal is based on a question of law—such as whether the trial court properly interpreted and applied the language of a statute—we conduct de novo review."). In conducting de novo review, an appellate court "considers the matter anew and freely substitutes its own judgment for that of

the lower tribunal." *Morris v. Rodeberg*, 385 N.C. 405, 409 (2023) (cleaned up).

III.

In his principal brief to this Court, plaintiff makes two main arguments. First, he contends that both the trial court and the Court of Appeals erred by classifying the personal goodwill of Sneed, PLLC as marital property. Second, he maintains that the trial court and the Court of Appeals likewise erred "by treating the firm's enterprise goodwill as marital property."

Goodwill is "the component of a professional practice which is the most controversial and difficult to value, and yet often the most valuable." *Poore*, 75 N.C. App. at 420. It is an intangible asset that has been commonly defined as "the expectation of continued public patronage." *Id.* (citation omitted); *see also Goodwill*, *Black's Law Dictionary* (12th ed. 2024) [hereinafter *Black's*] (defining "goodwill" as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business"). "Goodwill exists as property merely as an incident to other property rights, and is not susceptible of being owned and disposed of separately from the property right to which it is incident." *Maola Ice Cream Co. of N.C. v. Maola Milk & Ice Cream Co.*, 238 N.C. 317, 321 (1953).

Personal goodwill and enterprise goodwill are two subcategories of goodwill. This Court has never authoritatively defined them in the equitable distribution context, though appellate courts in other states have done so. For example, the Supreme Court of South Carolina has defined the two terms as follows:

Enterprise goodwill is that which exists independently of one's personal efforts and will outlast one's involvement with the business. Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers. Enterprise goodwill attaches to a business entity and is associated separately from the reputation of the owners. The asset has a determinable value because the enterprise goodwill of an ongoing business will transfer upon sale of the business to a willing buyer.

In contrast, personal goodwill is associated with individuals. It is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people. The implied assumption is that if the individual were not there, the clients would go elsewhere. Accordingly, the goodwill of a service business, such as a professional practice, consists largely of personal goodwill.

*Moore v. Moore*, 779 S.E.2d 533, 543 (S.C. 2015) (cleaned up).

Defendant insists that plaintiff has not preserved his argument that enterprise goodwill cannot be marital property. According to defendant: "In his brief to the Court of Appeals, [plaintiff] never argues that the trial court erred in its classification, value, and/or distribution of *enterprise* goodwill, and therefore, 'the lower appellate court never addressed or otherwise "ruled on" the classification, value, and/or distribution of *enterprise* goodwill.'" Defendant cites *State v. Sturkie*, 325 N.C. 225 (1989) (per curiam), in which this Court concluded that it had improvidently allowed discretionary review of an issue not presented to the Court of Appeals. 325 N.C. at 226–27.

We agree with defendant that plaintiff has not preserved his argument that enterprise goodwill cannot be marital property. "Issues not presented and discussed

in a party's brief [on appeal] are deemed abandoned." N.C. R. App. P. 28(a). In his principal brief to the Court of Appeals, plaintiff included a passing reference to "the issue of whether *any* law firm goodwill should be considered marital property." He failed to assert, however, that enterprise goodwill cannot be classified as marital property for equitable distribution purposes. Similarly, he did not ask the Court of Appeals to reverse the trial court's classification of his law firm's enterprise goodwill as marital property. We therefore conclude that discretionary review was improvidently allowed as to the proper classification of enterprise goodwill. Hence, the only issue left for us to resolve is whether the personal goodwill of a professional practice can qualify as marital property in an equitable distribution proceeding.

IV.

A.

The equitable distribution statute presumes "that all property acquired after the date of marriage and before the date of separation is marital property except property that is separate property." N.C.G.S. § 50-20(b)(1b) (2025). Unlike marital property, "[s]eparate property may not be distributed." *Crowell v. Crowell*, 372 N.C. 362, 368 (2019).

We disagree with the Court of Appeals' assertion that "our courts have consistently declined to draw a distinction between personal and enterprise goodwill" in equitable distribution cases. *Sneed*, 293 N.C. App. at 659. As far as we can tell, neither the Court of Appeals nor this Court has directly confronted the distinction in

this context.

In *Poore*, the Court of Appeals had to decide for the first time "how to value a solely-owned professional association for purposes of equitable distribution." 75 N.C. App. at 419. It explained that "the task of a reviewing court on appeal is to determine whether the approach used by the trial court reasonably approximated the net value of the partnership interest." *Id.* Because "[t]here is no set rule for determining the value of the goodwill of a professional practice," the Court of Appeals stressed in *Poore* that "each case must be determined in light of its own particular facts." *Id.* at 421. Moreover, "[t]he determination of the existence and value of goodwill is a question of fact and not of law and should be made with the aid of expert testimony." *Id.* (cleaned up).

The Court of Appeals urged trial courts to exercise caution in valuing goodwill because "the individual practitioner will be forced to pay the ex-spouse tangible dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements." *Id.* (cleaned up). The court offered a non-exclusive list of factors that can affect the value of goodwill: "the age, health, and professional reputation of the practitioner, the nature of the practice, the length of time the practice has been in existence, its past profits, its comparative professional success, and the value of its other assets." *Id.* The Court of Appeals described appraisal methods that have been used to value goodwill, one of which "is to determine the market value of the goodwill, [that is], the price that a willing buyer would pay to a willing seller for it." *Id.* To be

legitimate, the court explained, any goodwill valuation method must "measure[ ] the present value of goodwill by taking into account past results, and not the postmarital efforts of the professional spouse." *Id.*

Nothing in *Poore* indicates that either party asked the Court of Appeals to distinguish between personal goodwill and enterprise goodwill in that case. In fact, the terms "personal goodwill" and "enterprise goodwill" do not appear in the opinion.

The same is true of this Court's opinion in *McLean v. McLean*, 323 N.C. 543 (1988). There, the Court of Appeals vacated the trial court's findings regarding the valuation of the husband's law practice and remanded the case to the trial court for a new value determination. 323 N.C. at 544–45. The trial court had used the "return on investment" approach to arrive at the law firm's value, but the Court of Appeals concluded that "there was no evidence . . . to support the rate of return used by the [trial] court in making its calculations or to indicate that such a method would yield an accurate evaluation." *Id.* at 557 (quoting *McLean v. McLean*, 88 N.C. App. 285, 292 (1987)).

On appeal to this Court, the *McLean* defendant argued that the trial court also erred by admitting the expert testimony of a certified public accountant because the accountant failed to base his valuation of the firm on the factors listed in *Poore*. This Court disagreed, reasoning that the *Poore* factors "relate to the weight to be accorded such [expert testimony], not to its admissibility." *Id.* at 556.

We nonetheless affirmed the Court of Appeals' decision to vacate and remand.

The trial court's judgment, we explained, "reflect[ed] no consideration of goodwill, other than [noting] that the [trial] court chose a return on investment approach in part 'because of the difficulty in arriving at a [goodwill] value.'" *Id.* at 558. While agreeing with *Poore* that goodwill should be valued, we "join[ed] the Court of Appeals in cautioning trial courts to value goodwill with great care" to avoid unfairness to practitioners. *Id.* (cleaned up). We further stated that "[t]he factors listed in *Poore* as relevant in valuing goodwill—age, health, reputation of the practitioner, nature of the practice, length of time in existence, profitability, and comparative professional success—are helpful, though not exclusive or absolute." *Id.*

Like the Court of Appeals in *Poore*, this Court in *McLean* neither addressed the distinction between personal goodwill and enterprise goodwill nor the potential impact of that distinction on equitable distribution. Thus, while informative, *McLean* is not dispositive here.

Finally, in *Sonek v. Sonek*, 105 N.C. App. 247 (1992), the Court of Appeals concluded that "a salaried employee of a professional association who has no ownership interest in the association cannot have personal goodwill for equitable distribution purposes." 105 N.C. App. at 249. In support of this holding, the court observed that "[t]he factors discussed in *Poore*, such as the past profits of the practice and the value of its assets, are obviously inapplicable to a non-owner salaried employee since they presume the existence of an ownership interest." *Id.* at 250.

Although *Sonek* uses the term "personal goodwill," it does not expressly

distinguish it from enterprise goodwill, nor does it address the proper treatment of personal goodwill in the equitable distribution of professional practices. Hence, *Sonek* does little to aid our analysis.

## B.

Among appellate courts in other states, "[t]here is a split of authority on whether enterprise goodwill and/or personal goodwill in a professional practice may be characterized as marital property and thus equitably distributed." *May v. May*, 589 S.E.2d 536, 542 (W. Va. 2003). A few courts "have taken the position that neither personal nor enterprise goodwill in a professional practice constitutes marital property." *Id.* at 544; *see also, e.g., Singley v. Singley*, 846 So. 2d 1004, 1011 (Miss. 2002) (concluding that goodwill "cannot be deemed a divisible marital asset in a divorce action"). Other state courts have made "no distinction between personal and enterprise goodwill" and have taken the position that a professional practice's goodwill can qualify as marital property. *May*, 589 S.E.2d at 543 (cleaned up); *see also, e.g., Sommers v. Sommers*, 660 N.W.2d 586, 590 (N.D. 2003) ("We have indicated that the goodwill of a divorcing party's business interests may be considered in valuing the parties' marital property.").

Of those state courts that have considered the issue, however, most have concluded "that personal goodwill is not marital property, but that enterprise goodwill is marital property." *May*, 589 S.E.2d at 545; *see also, e.g., Gaskill v. Robbins*, 282 S.W.3d 306, 315 (Ky. 2009) (classifying personal goodwill as nonmarital); *Howell*

*v. Howell*, 523 S.E.2d 514, 520 (Va. Ct. App. 2000) (categorizing personal goodwill as "separate property in a divorce action"); *Butler v. Butler*, 663 A.2d 148, 155 (Pa. 1995) (holding enterprise goodwill to be the only type of goodwill that should be included when valuing a business for equitable distribution); *Thompson v. Thompson*, 576 So. 2d 267, 270 (Fla. 1991) (emphasizing that only the "business asset" of enterprise goodwill is divisible upon divorce); *Taylor v. Taylor*, 386 N.W.2d 851, 858–59 (Neb. 1986) (opining that, while personal goodwill "is not a marketable asset distinct from the individual," enterprise goodwill is "a business asset with value independent of the presence or reputation of a particular individual" and should therefore be characterized as marital property for distribution purposes).

Courts in the majority camp have explained their willingness to regard the enterprise goodwill of a professional practice as marital property by observing that the value of enterprise goodwill can be quantified and that enterprise goodwill can continue to exist even if the practitioner abandons the practice. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268–69 (Ind. 1999); *see also Thompson*, 576 So. 2d at 270 (explaining that, "to be a marital asset," goodwill "must exist separate and apart from the reputation or continued presence of the marital litigant"). In other words, enterprise goodwill "is in general transferrable to others and has a value to others." *Yoon*, 711 N.E.2d at 1269; *see also Moore*, 779 S.E.2d at 543 (stating that enterprise goodwill "has a determinable value because the enterprise goodwill of an ongoing business will transfer upon sale of the business to a willing buyer" (quoting *Wilson v. Wilson*, 706

S.E.2d 354, 361 (W. Va. 2010))).

Those same courts have reasoned that the personal goodwill of a professional practice "is not subject to equitable distribution." *May*, 589 S.E.2d at 547. Why? Because it "represents nothing more than [the] probable future earning capacity [of the practitioner]." *Taylor*, 386 N.W.2d at 858. As such, personal goodwill "is not a marketable asset distinct from the individual." *Id.*; *see also Yoon*, 711 N.E.2d at 1269 ("[A]ny value that attaches to a business as a result of . . . 'personal goodwill' represents nothing more than the future earning capacity of the individual and is not divisible."). Thus, "although relevant in determining alimony, [personal goodwill] is not a proper consideration in dividing marital property in a dissolution proceeding." *Taylor*, 386 N.W.2d at 858; *see also May*, 589 S.E.2d at 547 (holding that personal goodwill "is not a divisible asset" and "is more properly considered as the individual's earning capacity that may affect property division and alimony").

Some courts have also opined that treating personal goodwill as marital property risks imposing unfair financial burdens on practitioners. For one thing, a practitioner who is ordered to pay a share of personal goodwill in a marital dissolution proceeding cannot sell or otherwise liquidate that goodwill to satisfy the obligation. *See Taylor*, 386 N.W.2d at 858 ("There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value." (quoting *Holbrook v. Holbrook*, 309 N.W.2d 343, 355 (Wis. Ct. App. 1981))).

For another, "[t]o assess a value on [personal goodwill] and to award a proportionate amount to the spouse is akin to making a lump sum alimony payment since it is based on future earnings of the paying spouse. If, in addition to this payment, alimony is awarded, there is, in effect, a double charge on the future income of the paying spouse." *Travis v. Travis*, 795 P.2d 96, 99 (Okla. 1990) (quoting *Beasley v. Beasley*, 518 A.2d 545, 553 (Pa. Super. Ct. 1986)).

C.

However persuasive the reasons that have led other courts to adopt the majority rule, we cannot simply follow their lead. The provisions of the equitable distribution statute must guide our decision.

In relevant part, the statute defines "[m]arital property" to include:

> All real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, . . . *except property determined to be separate property*. . . . It is presumed that all property acquired after the date of marriage and before the date of separation is marital property *except property that is separate property*. . . . [This] presumption may be rebutted by the greater weight of the evidence.

N.C.G.S. § 50-20(b)(1b) (2025) (emphases added).

The statute defines "[s]eparate property" to mean:

> All real and personal property acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage. . . . The increase in value of separate property and the income derived from separate property is considered separate property. All professional licenses and business licenses that would terminate on transfer are considered separate property.

*Id.* § 50-20(b)(2).

The personal goodwill of Sneed, PLLC does not fit neatly into the definition of separate property. Plaintiff founded the firm after marrying defendant, so its personal goodwill plainly does not qualify as property "acquired by a spouse *before* marriage." *Id.* (emphasis added). Similarly, the firm did not acquire personal goodwill during the marriage "by devise, descent, or gift." *Id.*; *see Devise*, *Black's* (defining "devise" as "[p]roperty disposed of in a will"); *Descent*, *Black's* (defining "descent" as "[t]he acquisition of real property by law, as by inheritance," or "the passing of intestate real property to heirs"); *Gift*, *Black's* (defining "gift" as property "voluntar[ily] transfer[red] . . . to another without compensation").

Plaintiff points to the final sentence in N.C.G.S. § 50-20(b)(2), which classifies nontransferable professional licenses, such as law licenses, as separate property. According to plaintiff, "[c]ourts [in states] with similar laws have held that if professional licenses are separate property, then personal goodwill should also be classified as separate property." Plaintiff could have added that the equitable distribution statute requires our courts to treat the "increase in value of separate property and the income derived from separate property" as separate property. N.C.G.S. § 50-20(b)(2).

If accepted by this Court, this argument could call into question decisions by the Court of Appeals that address the proper classification of increases in the value of separate property. In those cases, some of which involve professional licenses, the

court has distinguished between active and passive increases. *See, e.g., Stewart v. Stewart*, 141 N.C. App. 236, 248 (2000). Whereas passive increases are unquestionably separate property, the Court of Appeals has held that increases attributable to the "financial or managerial contributions of one of the spouses to the separate property during the marriage" can be marital property under the equitable distribution statute. *Id.* (cleaned up). The logic of this passive/active distinction has been understood to apply to income derived from professional licenses. *See* Suzanne Reynolds, *Reynolds on North Carolina Family Law* § 6.26 (6th ed. 2020) [hereinafter *Reynolds*] (observing that "[o]nly the license itself and any passive increase in value or income is separate property").

No doubt much hard work went into developing the personal goodwill of Sneed, PLLC. In his briefs to this Court, however, plaintiff does not discuss—much less urge us to overturn—the Court of Appeals' case law on passive and active increases in the value of separate property. Consequently, we leave those precedents undisturbed.

Plaintiff further argues that "[p]ersonal goodwill, representing future earnings potential, cannot logically be 'acquired during the marriage' when it explicitly represents income to be earned after separation." This contention appears to us to miss the mark. Of course, plaintiff has not yet received *future* earnings; however, he undoubtedly acquired his future earnings *potential* during his marriage to defendant. It was during his marriage that he founded Sneed, PLLC and developed the reputation, knowledge, and skills that increased his earning capacity.

Nonetheless, we think it obvious that personal goodwill cannot qualify as marital property under the equitable distribution statute. The statute assumes that all such property possesses an attribute that personal goodwill unquestionably lacks: the capacity to be distributed. *See* N.C.G.S. § 50-20(a) (2025) (directing trial courts to "provide for an equitable distribution of the marital property . . . in accordance with this section"). Representing as it does a practitioner's future earning potential, personal goodwill is tied to the individual practitioner. Indeed, some courts have gone so far as to deny that it is property at all. *See, e.g., McKenna v. Pray*, 320 A.3d 415, 422 (Me. 2024) (cleaned up) ("As a general principle, the personal goodwill of a professional practice is not a species of property."). In purporting to distribute a professional practice's personal goodwill between the parties to an equitable distribution proceeding, a trial court is really granting one spouse a right to property—the other spouse's future earnings—that does not yet exist.

We therefore agree with most state appellate courts that have considered whether the personal goodwill of a professional practice can be marital property. Specifically, we hold that the personal goodwill of a professional practice does not qualify as marital property for equitable distribution purposes. To the extent that decisions of this Court or the Court of Appeals allow such goodwill to be classified as marital property, we disavow those decisions.

Defendant insists that classifying personal goodwill as separate property will result in "chaos" and "make property distribution financially crippling, if not

impossible, for the parties and gut our equitable distribution law." According to defendant, if we hold that personal goodwill is necessarily separate property, "then all the income from a business which is derived from personal goodwill is also separate property." This means, defendant says, "that any income that is earned from a business during the marriage must be traced out to determine if the income came from personal goodwill (i.e., separate property) or enterprise goodwill (i.e., marital property)." Bank accounts, retirement accounts, marital residences, and other property funded by or purchased with "personal goodwill income" could be deemed separate property, defendant argues. The result? Defendant predicts that "[p]arties could never settle equitable distribution claims without involving an expert to trace the separate property which flowed from goodwill into all assets acquired during the marriage coverture."

Defendant paints a bleak picture, but she is wrong. The reason is simple: personal goodwill is always prospective. The term refers to what practitioners are expected to earn, not to what they have already earned. You cannot trace *past* earnings to personal goodwill because, by definition, personal goodwill concerns *future* earnings. Hence, our holding today does not prevent a trial court from classifying the income generated by a professional practice, even one with a sole practitioner, as marital property on the same basis as other "real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties." N.C.G.S. § 50-20(b)(1b).

Plaintiff further argues that classifying personal goodwill as marital property would violate the "inalienable" right of North Carolinians—recognized by our state constitution—to "the enjoyment of the fruits of their own labor." N.C. Const. art. I, § 1. Having ruled that the personal goodwill of plaintiff's law firm is not marital property, we need not reach the merits of this argument. In any event, it appears that plaintiff did not make this argument to the trial court, and so it is not properly before us. *See In re J.N.*, 381 N.C. 131, 133–34 (2022) ("[R]espondent['s] fail[ure] to assert his constitutional argument in the trial court . . . . waived the argument for appellate review.").

The trial court distinguished between the enterprise goodwill and personal goodwill of Sneed, PLLC but classified both as marital property. The Court of Appeals affirmed the classification, though it interpreted our precedents to reject distinctions between the enterprise and personal goodwill of professional practices. Based on what we have said above, we leave the trial court's treatment of the firm's enterprise goodwill intact but hold that both the trial court and the Court of Appeals erred in classifying the law firm's personal goodwill as marital property.

We emphasize that our decision is limited to equitable distribution proceedings. It should not be understood, for instance, to impair the right of a professional practitioner's spouse to alimony or to change the law regarding the consideration of earnings potential in alimony determinations. *See generally Reynolds*, § 5.16[c][5] (summarizing the case law on the circumstances in which a

spouse's earning capacity may inform a trial court's alimony decision).

V.

Discretionary review was improvidently allowed as to the proper classification of enterprise goodwill. The decision of the Court of Appeals is reversed insofar as it affirms the trial court's classification of the personal goodwill of plaintiff's law firm as marital property. This case is remanded to the Court of Appeals for further remand to the trial court for entry of an equitable distribution order consistent with this opinion and for further proceedings not inconsistent therewith.

DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART; REVERSED IN PART AND REMANDED.